IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PATRICK R. McCOY,                          6:17-cv-01146-BR

         Plaintiff,                        OPINION AND ORDER

v.

Commissioner, Social
Security Administration,

         Defendant.


**SHERWOOD J. REESE**
Drew L. Johnson, P.C.
1700 Valley River Drive
Eugene, OR 97401
(541) 434-6466

         Attorneys for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**SARAH MOUM**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/A 221A
Seattle, WA 98104
(206) 615-2936

        Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Patrick R. McCoy seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for further proceedings.

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for DIB on October 1, 2013, alleging a disability onset date of January 1, 2011. Tr. 161.[1] The application was denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on June 27, 2016.

_____

[1] Citations to the official transcript of record filed by the Commissioner on December 12, 2017, are referred to as "Tr."

Tr. 40-65.  Plaintiff was represented at the hearing.  Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on September 23, 2016, in which she found Plaintiff was not disabled before his December 31, 2012, date last insured and, therefore, is not entitled to benefits.  Tr. 27-39.  Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on June 19, 2017, when the Appeals Council denied Plaintiff's request for review.  Tr. 1-6.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on September 10, 1955, and was 60 years old at the time of the hearing.  Tr. 66.  Plaintiff completed high school.  Tr. 162.  Plaintiff has past relevant work experience as a small-business owner.  Tr. 33.

Plaintiff alleges disability during the relevant period due to neuropathy, diabetes, and "Charcot-Marie-toothe [*sic*] disease."  Tr. 161.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 32-34.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

**I.    The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). *See also Keyser v.*

*Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 404.1520(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885

F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).
*See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine
whether the claimant is able to do any other work that exists in
the national economy. 20 C.F.R. § 404.1520(a)(4)(v). *See also
Keyser*, 648 F.3d at 724-25. Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can perform. *Lockwood v.
Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).
The Commissioner may satisfy this burden through the testimony of
a VE or by reference to the Medical-Vocational Guidelines set
forth in the regulations at 20 C.F.R. part 404, subpart P,
appendix 2. If the Commissioner meets this burden, the claimant
is not disabled. 20 C.F.R. § 404.1520(g)(1).


## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff had not engaged in
substantial gainful activity from his January 1, 2011, alleged
onset date through his December 31, 2012, date last insured.
Tr. 29.

At Step Two the ALJ found Plaintiff had the severe

impairments of cirrhosis of the liver, "type II diabetes mellitus with peripheral neuropathy," and alcoholism during the relevant period. Tr. 29. The ALJ found Plaintiff's hypertension and obesity were nonsevere. Tr. 29. The ALJ also found Plaintiff's Charcot-Marie-Tooth disease was not a medically determinable impairment. Tr. 30.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments during the relevant period did not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 30. The ALJ found during the relevant period that Plaintiff had the RFC to perform medium work "except he could have only occasionally climbed ladders, ropes, or scaffolds and could have been only occasionally exposed to hazards such as machinery and unprotected heights." Tr. 31.

At Step Four the ALJ found during the relevant period Plaintiff could perform his past relevant work. Tr. 33. Accordingly, the ALJ found Plaintiff was not disabled from January 1, 2011, through December 31, 2012.


**DISCUSSION**

Plaintiff contends the ALJ erred when she (1) partially rejected Plaintiff's testimony; (2) rejected the opinion of Steven Yoder, M.D., treating physician; (3) found Plaintiff could return to his past relevant work; and (4) failed to properly

develop the record.

**I.   The ALJ did not err when she partially rejected Plaintiff's testimony.**

Plaintiff alleges the ALJ erred when she failed to provide clear and convincing reasons for partially rejecting Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the

claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834).

At the hearing Plaintiff testified he was unable to work
during the relevant period due to neuropathy in his "legs and
down." Tr. 51. Plaintiff stated he had problems with his left
foot "for many years . . . but it was tolerable." Tr. 52. When
his foot pain got to the point at which it was not tolerable, he
applied for DIB. Plaintiff stated he was taking over-the-counter
medications during the relevant period to deal with his pain.
Plaintiff also stated he had "extreme osteoarthritis" in his
right knee during the relevant period. Tr. 54. Plaintiff
testified during the relevant period he could not walk for more
than 500 feet in an hour due to left-foot pain and right-knee
pain.

The ALJ found Plaintiff's "medically determinable
impairments could reasonably have been expected to have caused
the alleged symptoms" during the relevant period, but Plaintiff's
"statements concerning the intensity, persistence and limiting
effects of [his] symptoms are not" credible. Tr. 31. The ALJ
noted although Plaintiff alleged an onset date of January 1,
2011, the record does not contain any medical evidence before
September 2011. On September 12, 2011, Dr. Yoder examined
Plaintiff. Plaintiff complained of numbness and tingling in both
feet, loss of balance, and "some difficulty walking," which had
"been going on for 4 to 5 years." Tr. 235. Dr. Yoder noted

Plaintiff's gait was "a little unsteady" and that Plaintiff had some atrophy of the muscles in his legs as well as "decreased light tough sensation" in "the lower third of his lower legs." Tr. 236. Dr. Yoder also noted Plaintiff did not have any "reflexes at knees or ankles." Tr. 236. Dr. Yoder diagnosed Plaintiff with peripheral neuropathy, hepatomegaly, alcohol liver disease, and hypertension. Dr. Yoder recommended Plaintiff stop drinking alcohol. Plaintiff was seen by Dr. Yoder again on September 14, 2011. Dr. Yoder diagnosed cirrhosis, recommended Plaintiff stop drinking alcohol, and prescribed gabapentin and medical marijuana. Plaintiff saw Dr. Yoder on October 14, 2011, and November 16, 2011, related to Plaintiff's peripheral neuropathy. Plaintiff reported he continued to drink alcohol, and Dr. Yoder again recommended Plaintiff stop drinking alcohol. The record does not reflect any treatment for cirrhosis, diabetes, or alcoholism again until October 2012 at which time Plaintiff reported to Dr. Yoder that Plaintiff's left foot was swollen. Dr. Yoder noted Plaintiff continued to have peripheral neuropathy; "type 2 diabetes, uncontrolled, secondary to patient noncompliance"; cirrhosis; hypertension; and alcoholism. Tr. 243. Dr. Yoder ordered a metabolic panel to determine what medications to give Plaintiff and advised Plaintiff that "he [was] getting to the point where he [was] going to be having significant issues from not taking care of himself, including the

possibility of amputations, needing a cast for prolonged periods of time, [and] more frequent hospitalizations." Tr. 243.

On October 30, 2012, Plaintiff saw Dr. Yoder again. Plaintiff reported he continued to drink alcohol, but less than he had been drinking. Plaintiff's foot was "much less swollen," and Plaintiff reported his "pain [was] pretty well gone away." Tr. 245. Dr. Yoder started Plaintiff on Glyburide to treat his diabetes and advised Plaintiff that he should not drink alcohol while on that medication. Plaintiff saw Dr. Yoder on November 13, 2012, and December 12, 2012. At both appointments Dr. Yoder noted Plaintiff's diabetes was under "improved control" and his hypertension was "improved but not at goal." Tr. 246. Plaintiff, however, continued to drink alcohol and to experience "decreased sensation" in his feet. Dr. Yoder continued to prescribe gabapentin to address Plaintiff's neuropathy.

The ALJ noted the record does not contain any indication during the relevant period that Plaintiff was unable to walk for more than 500 feet or that his foot pain became intolerable. In fact, as noted, the record reflects in October 2012 Plaintiff reported the pain in his foot had "pretty well gone away." Tr. 245. In addition, the ALJ noted the record reflects Plaintiff received limited treatment during the relevant period including a nearly one-year gap in treatment between November 2011 and October 2012. The lack of consistent treatment is a

legitimate reason to discredit pain testimony. *See, e.g., Burch v. Barnhart*, 400 F.3d 5676, 681 (9th Cir. 2005)(holding lack of consistent treatment was a "clear, convincing, and specific reason" to partially reject the plaintiff's pain testimony). Similarly, unexplained gaps in treatment are also relevant to an ALJ's credibility finding. *See, e.g., Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007)("Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated.").

On this record the Court finds the ALJ did not err when she partially rejected Plaintiff's testimony because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

## II. The ALJ did not err when she rejected Dr. Yoder's opinion.

Plaintiff asserts the ALJ erred when she rejected Dr. Yoder's May 2016 opinion.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751

(9th Cir. 1989)).  When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

On May 31, 2016, Dr. Yoder stated in a letter to Plaintiff:

> It is my opinion having been your primary care physician for several years and having helped you with diabetic peripheral neuropathy and arthritis in your knee that you are unable to be gainfully employed.  This is because of pain in your feet when you're standing, fatigue from medications that you take to be able to tolerate the pain and difficulty concentrating because of the pain.  I believe the records from my clinic will support this opinion.

Tr. 562.

The ALJ noted Dr. Yoder's opinion was offered over three years after the end of the relevant period and was written entirely in the present tense indicating that it addressed Plaintiff's impairments only as of the date of the letter.  In addition, Dr. Yoder's treatment notes do not support a finding that Plaintiff was unable to work during the relevant period. Plaintiff testified he took only over-the-counter medications like Advil and Tylenol to treat his pain during the period, none of which caused fatigue.  In addition the record does not reflect Plaintiff had difficulty concentrating due to pain during the relevant period, and, in fact, the pain in his foot was mainly gone by October 2012.  The ALJ, therefore, did not consider

Dr. Yoder's May 2016 opinion. Although the Ninth Circuit has held retrospective medical opinions are "relevant to a disability determination," the ALJ is not "bound to accept" retrospective opinions when they are not supported by the medical record. *E.R.H. v. Comm.*, 384 F. App'x 573, 575 (9th Cir. 2010). The Court concludes on this record that the ALJ did not err when she rejected Dr. Yoder's opinion because she provided clear and convincing reasons supported by substantial evidence in the record for doing so.

## IV. The ALJ did not err when she found Plaintiff could return to his past relevant work.

Plaintiff asserts the ALJ erred when she found Plaintiff could return to his past relevant work as a small business owner. Specifically, Plaintiff asserts the ALJ erred because her conclusion was based on an RFC that did not include the limitations set out by Dr. Yoder in his May 2016 opinion and because the ALJ failed to properly apply the Medical-Vocational Guidelines found at 20 C.F.R., Part 404, subpart P, Appendix 2 (the Grids).

The Court has already concluded the ALJ did not err when she rejected Dr. Yoder's opinion as to Plaintiff's alleged limitations. On this record, therefore, the Court also concludes the ALJ did not err when she failed to include those limitations in Plaintiff's RFC.

In addition, the Grids apply only when the ALJ finds a

plaintiff cannot perform her past relevant work.  *See* 20 C.F.R. pt. 404, subpt. P., app. 2, § 200.00(a)(the Grids apply in cases when "the individual's impairment(s) prevents the performance of his or her vocationally relevant past work.").  *See also Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996)("The determination that [the plaintiff] could perform his past relevant work also negates his argument that the ALJ erred in the application of the medical-vocational guidelines.").  The Court, therefore, concludes the ALJ did not err when she did not apply the Grids.

**V.    The ALJ erred when she did not further develop the record.**

Plaintiff alleges the ALJ erred when she did not further develop the record.  Specifically, Plaintiff asserts the ALJ erred when she failed to call a medical expert to testify at the hearing pursuant to Social Security Ruling (SSR) 83-20.

"'[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'"  *Malloy v. Colvin*, 664 F. App'x 638, 640 (9th Cir. 2016)(quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).  "[T]he 'duty to conduct an appropriate inquiry' is triggered 'when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.'"  *Malloy*, 664 F. App'x at 640 (quoting *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)).

SSR 83-20 provides in relevant part:

> With slowly progressive impairments, it is
> sometimes impossible to obtain medical evidence
> establishing the precise date an impairment became
> disabling. Determining the proper onset date is
> particularly difficult, when, for example, the
> alleged onset and the date last worked are far in
> the past and adequate medical records are not
> available. In such cases, it will be necessary to
> infer the onset date from the medical and other
> evidence that describe the history and
> symptomatology of the disease process.
>
> * * *
>
> At the hearing, the administrative law judge (ALJ)
> should call on the services of a medical advisor
> when onset must be inferred.

SSR 83-20, at *3. In *Diedrich v. Berryhill* the Ninth Circuit held a medical expert is required when "there are large gaps in the medical records documenting a slowly progressive impairment and an ALJ's assessment of the disability onset date would be mere speculation without the aid of a medical expert." 874 F.3d 634, 639 (9th Cir. 2017). In contrast, the Ninth Circuit concluded in *Wellington v. Berryhill*, 878 F.3d 867, 874 (9th Cir. 2017), that an ALJ is not required to call a medical expert when "the available evidence clearly could not support an inference of disability onset during a gap in the medical records."

Here there is an eleven-month gap in the medical records from November 2011 to October 2012, which is during the heart of the relevant period. In addition, reviewing physicians Martin Lahr, M.D., and Megan Nicoloff, Psy.D., both noted: "Large gap

in evidence . . .; Balance of evidence is not extensive enough to establish severity of impairment." Tr. 70-71. In addition, Plaintiff noted he had received treatment from a foot specialist before his date last insured, but she had retired and Plaintiff did not have her records. Finally, the record reflects Plaintiff had a "severely abnormal" EMG (electromyogram) study in February 2014, fourteen months after his date last insured. Tr. 266-71. The EMG study noted "[l]ower extremity sensory and motor nerve responses are essentially absent or markedly abnormal." *Id*. Finally, as noted, Dr. Yoder found in September 2011 that Plaintiff's gait was "a little unsteady"; Plaintiff had some atrophy of the muscles in his legs as well as "decreased light tough sensation" in "the lower third of his lower legs"; and Plaintiff did not have any "reflexes at knees or ankles." Tr. 236. Dr. Yoder, however, failed to provide an opinion that was clearly retrospective in nature.

On this record the Court concludes the ALJ erred when she failed to call a medical expert to testify at the hearing as to Plaintiff's impairments and alleged onset date.

## REMAND

The Court must determine whether to remand this matter for further proceedings or to remand for calculation of benefits.

The decision whether to remand for further proceedings or

for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

On this record the Court concludes further proceedings are necessary because it is not clear whether the ALJ would have found Plaintiff was disabled during the relevant period if a medical expert had testified at the hearing as to Plaintiff's alleged impairments and onset date. Thus, the Court concludes a remand for further proceedings consistent with this Opinion and Order is required to permit the ALJ to call a medical expert to

assist in determining whether Plaintiff was disabled within the relevant period.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to Sentence Four of 28 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 8th day of May, 2018.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge